UNITED STATES of America, Appellee,

v.

James Edward McFADDEN, Appellant.

UNITED STATES of America, Appellee,

v.

John(ny) DOLLARD, Appellant.

Nos. 83–5272(L), 83–5273.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1984.

Decided July 16, 1984.

Certiorari Denied Oct. 15, 1984.
See 105 S.Ct. 302.

John F. Hardaway and Steven D. Dennis, Columbia, S.C., for appellants.

Marvin J. Caughman, Asst. U.S. Atty., Columbia, S.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before WINTER, Chief Circuit Judge, CHAPMAN, Circuit Judge and BUTZNER, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

Appellants were convicted of attempting to rob the First National Bank of Orangeburg, Cameron Branch, and of attempting to rob the South Carolina Federal Savings & Loan Association at Manning, South Carolina in violation of 18 U.S.C. §§ 2113(a) and 2. They were also convicted of possession of a sawed-off shotgun in violation of 26 U.S.C. §§ 5845(a), 5861(d), 5871 and 18 U.S.C. § 2. They contend the convictions of attempted bank robbery under 18 U.S.C. § 2113(a)[1] may not stand because there was no use of force as required by the statute. They also claim prejudice because an excised paragraph from a typed transcript of a taped conversation was allowed to go to the jury room. Finding no merit in either exception, we affirm.

## I

In the fall of 1981 three bank robberies occurred which were so similar that the FBI suspected they involved a common plan and the same individuals. On August 26, 1981 the Bank of Elloree, Santee Branch, was robbed by three individuals armed with a sawed-off shotgun and pistols. The hands and mouths of the tellers were taped by the robbers before they left. On September 9, 1981 the Coastal Federal Savings and Loan Association, Socastee Branch, was robbed by two individuals armed with a sawed-off shotgun and a pistol and again the employees were taped, hand and mouth, by adhesive tape. On October 23, 1981, two individuals armed with a sawed-off shotgun and a pistol robbed the Carolina Bank and Trust Company, Society Hill Branch, and the robbers again taped the mouths and hands of the employees. Each of these robberies occurred early in the morning and the robbers had obviously been hiding in shrubbery adjacent to the bank. Each of the branch banks was in an isolated area.

---

1. 18 U.S.C. § 2113(a)

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; . . .

The FBI, after investigation of the robberies, suspected that James Edward McFadden and Reginald Rogers were involved. At that time Leroy Bishop, a former associate of Rogers and McFadden, was in custody of the South Carolina Department of Corrections because of a conviction of a state offense. He offered assistance to the FBI in the summer of 1982 and received an early parole in order to assist the FBI in an investigation of appellant McFadden. Bishop was supplied with a tape recorder strapped to his body and was later furnished with an automobile which included tape recording equipment.

In conversations between McFadden and Bishop, which were recorded by Bishop, McFadden admitted robbing the banks at Santee, Socastee and Society Hill. On September 2, 1982 Bishop recorded a conversation among McFadden, Dollard and Bishop in which plans were made to rob the First National Bank of Orangeburg, Cameron Branch, on September 7, 1982. On September 2, 1982 the FBI agents photographed McFadden, Dollard and Bishop in the town of Cameron as they were staking out the bank. Bishop advised the FBI of the planned robbery. On September 7 the two defendants and Bishop left the motel in which they were staying and drove to Cameron. At that time they had with them weapons and disguises to be used in the robbery. They drove into Cameron early in the morning before the bank was open with the intent of hiding in the shrubbery by the bank until the employees came to work. They planned to enter the bank with an employee and commit the robbery. However, upon arriving in the vicinity of the Cameron bank they noticed a sheriff's patrol car in the vicinity and also a suspicious pickup truck, which was in fact an FBI surveillance vehicle. They abandoned their plans to rob the Cameron branch and drove immediately to the town of Manning to plan the robbery of the savings and loan. That evening the three drove to Myrtle Beach to pick up an additional sawed-off shotgun for use in the Manning job. The following morning, September 8, 1982, at about 5:30 a.m., they left the motel and proceeded to the vicinity of the savings and loan association branch in Manning. Dollard hid two sawed-off shotguns and a disguise in the shrubbery outside the bank, and they drove around the vicinity until they were satisfied no police vehicles were in the area. McFadden and Dollard got out of the car and proceeded toward the bank. Shortly before they reached the bank, Dollard spotting an FBI agent with a shotgun, ran to McFadden. Both were arrested by the FBI agents before they could reach their weapons. The FBI agents recovered the bag that had been thrown into the bushes near the bank and found that it contained a wig and two sawed-off shotguns. The defendants offered no evidence at trial.

II

Appellants argue that 18 U.S.C. § 2113(a) requires that force and violence or intimidation must accompany the attempt to take property from the custody or possession of the bank. In the present case this would mean that the agents must wait until the defendants entered the bank or the vicinity of the bank with the sawed-off shotguns at the ready. This would require that the lives of the bank employees, the police, any innocent bystanders and the defendants themselves be endangered before an arrest could be made for an attempted robbery of the bank by use of force and violence or intimidation. Appellants cite *United States v. Baker*, 129 F.Supp. 684 (S.D.Cal.1955) but we do not find this case to support appellants' position. It holds that the attempt relates to the taking and not to the intimidation. The question is best answered by *United States v. Stallworth*, 543 F.2d 1038, 1040 (2nd Cir.1976) in which the court stated:

Appellants contend that their conduct, while admittedly is sufficient to sustain a conspiracy conviction, punishable by a maximum of five years incarceration, will not support a judgment of attempted bank robbery, carrying a potential twenty-year prison term. They argue that their activities did not transcend a hypo-

thetical fixed point on a spectrum of conduct culminating in the substantive offense of bank robbery. Thus, appellants assert they cannot be convicted of attempted bank robbery because they neither entered the bank nor brandished weapons. We reject this wooden logic. Attempt is a subtle concept that requires a rational and logically sound definition, one that enables society to punish malefactors who have unequivocally set out upon a criminal course without requiring law enforcement officers to delay until innocent bystanders are imperiled.

The classical elements of an attempt are intent to commit a crime, the execution of an overt act in furtherance of the intention, and a failure to consummate the crime. The Fifth Circuit in *United States v. Mandujano*, 499 F.2d 370 (5th Cir.1974), *cert. denied* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975), has properly derived from the writing of many distinguished jurists a two-tiered inquiry to determine whether given conduct constitutes an attempt. Initially, the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime he is charged with attempting. Then, the defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime, conduct strongly corroborative of the firmness of the defendant's criminal intent. Id. at 376–377 (Footnotes omitted).

In *United States v. Jackson*, 560 F.2d 112 (2nd Cir.1977) *cert. denied* 434 U.S. 941 and 1017, 98 S.Ct. 434 and 736, 54 L.Ed.2d 301 and 762 (1977) the court was faced with a factual situation quite similar to the present case and also the defendant's argument that 18 U.S.C. § 2113(a) mentions only attempted taking and not attempted force, violence or intimidation, and therefore actual force, violence or intimidation must precede an attempted taking in order to be an offense under the statute. The court followed *Stallworth, supra.*, and also called attention to the definition of attempt found in the American Law Institute's Model Penal Code, § 5.01 of the Official Draft 1962. The Model Penal Code defines criminal attempt, in part, as follows:

(1) Definition of Attempt. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

. . . . .

(c) purposely does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

Various activities which may be considered a substantial step under (1)(c), when strongly corroborative of the actor's criminal purpose, include lying in wait, reconnoitering the place contemplated for the commission of the crime, possession of materials to be employed in the commission of the crime, and possession and collection of materials to be employed in the commission of the crime at or near the place contemplated for its commission, where such possession and collection serve no lawful purpose of the actor under the circumstances.

In the present case as to both the attempted robbery in Cameron and the attempted robbery in Manning, the evidence shows that the defendants acted with the kind of culpability otherwise required for the commission of the crime. The evidence further shows that the defendants engaged in conduct which constituted a substantial step toward the commission of the crime, and that the step was strongly corroborative of the firmness of the defendants' criminal intent. In each case the defendants discussed their plans to rob the banks, they reconnoitered the banks in question, they assembled the weapons and disguises necessary for use in the robbery and they proceeded to the area of the bank with a vehicle and a driver to be used in the get away.

### III

Prior to the introduction of the transcripts of the various taped conversations

of the defendants, the trial judge granted defendant Dollard's motion to delete one paragraph in which John Dollard, who was also known as Mutley Dollard, said he had convinced certain police officers trying to serve an arrest warrant on him that he was not in fact Mutley Dollard. Appellants argued that this paragraph was unduly prejudicial and the trial judge agreed. While the paragraph may have been prejudicial, almost everything in the taped conversations was prejudicial, but it does not follow that the paragraph was objectionable. Almost all evidence the prosecutor introduces in a criminal case is prejudicial to the defendant because it is intended to help prove guilt. Nevertheless, the trial judge deleted the paragraph and it was not read to the jury.

■ When the exhibits went to the jury room, the transcript went along and the word "delete" was handwritten in the margin beside the offending paragraph. Neither the judge nor the attorneys knew that the paragraph had inadvertently gotten to the jury until the judge received a note from the forelady inquiring as to whether the jury was to read the section marked "delete." The judge recalled the jury, had the paragraph cut from the transcript and instructed the jury if they had read the deleted part to disregard it. After the jury returned to its deliberations the court indicated that it felt from the statement made by the forelady that the jury had not read the paragraph and had not considered it as evidence at the time the question was presented to the court. The trial judge denied defendant's motions for a mistrial and for a new trial finding that the situation was properly handled by the corrective instructions and "the generally non-prejudicial nature of the deleted matter, when compared to the totality of the evidence in this case." We find no undue prejudice in the deleted paragraph. The trial judge's evaluation of whether a mistrial is necessary is entitled to "the highest degree of respect." *Arizona v. Washington,* 434 U.S. 497, 511, 98 S.Ct. 824, 833, 54 L.Ed.2d 717 (1978). We find no reason that would require a mistrial or new trial because the

"deleted" paragraph was in the jury room for a short time.

JUDGMENT AFFIRMED.