**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Virgil Sam RUNCO, Defendant–Appellant.**

No. 87–1277.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1989.

Decided April 21, 1989.

Sheldon Sherman, San Diego, Cal., for defendant-appellant.

Sanford Svetcov, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before NORRIS, NOONAN, and LEAVY, Circuit Judges.

NOONAN, Circuit Judge:

Virgil Sam Runco was indicted for possession with intent to distribute one kilo of

cocaine in violation of 21 U.S.C. § 841(a)(1) (1982) and of attempting to possess with intent to distribute approximately 20 kilos of cocaine in violation of 21 U.S.C. § 846 (1982). He was acquitted of the first count and convicted of the second. His motion to set aside the verdict and to have a judgment of acquittal entered was denied. He appeals. We affirm his conviction.

## FACTS

In August 1986 Runco was identified by a government informant as a dealer in cocaine. A series of meetings with government undercover agents culminated in a meeting at the San Francisco Airport Hilton Hotel on March 10, 1987. There Rodney Alvarez, a Drug Enforcement Administration agent, posed as Jorge, a drug supplier, and by prearrangement met Runco and took him to his hotel room. A video tape made by the government records the following exchange:

Runco: Well, we started the deal, about, what three months ago?

Alvarez: Yeah.

Runco: Right right then ... now it's going to go down a point ... 15.

Alvarez: Lay it on the table Sam ... 15 even.

Runco: Right.

.      .      .      .      .

Alvarez: Okay you know, what about the quantity, the first time out?

Runco: I just figured that you's tell me how much you want to do that.

Alvarez: Well always ... 20 the first time out.

.      .      .      .      .

Alvarez: Okay we could do 20 Tuesday. We could do 20 next Tuesday, Wednesday, Thursday, either day.

Runco: Any day, any day that I choose you mean.

Alvarez: Yeah.

.      .      .      .      .

Alvarez: Yes for just 20 I mean 20's not a lot, and I can't believe that somebody's going to do 20 for less than 15 or 16. I could do 15.5. Why don't you meet me half way?

Runco: Why I think we already met. We cannot go back into this again.

.      .      .      .      .

Alvarez: No we'll do it at 15. We can shake on that.

Runco: Alright.

Alvarez: For 20.

Runco: I am going to have to call you to day to tell you what the details are.

This conversation thus ended with the agreement of Alvarez to purchase 20 kilos at a price of $15,000 per kilo. Runco added that the cocaine that Alvarez would show him must be satisfactory. Alvarez then produced one kilo of cocaine. Runco sampled it and seemed satisfied.

Alvarez: Tell you what. As far as the bucks are concerned you can just show this to someone or whatever, all you have to do is speak up to make this proposition. It is time to play hardball.

Runco: Jorge, alright what are we going to do?

Alvarez: Alright. Here's the deal. You say you have about 100 and a half close to it, that is half the price for the 20 we agreed on at 15 each. All I want to do—two things. Do you think that you could do the 20, then I can do this. I can make arrangements for the 20 to be on location here in this area, public storage available to you on Saturday or Sunday. Okay, all you need is a key to get in. Nothing will be there until Saturday or Sunday. You make the arrangements for the pick up. You'll get it on credit. I'll only do that if you're not bullshitting me that you're close on the money.

Runco: Let's, let's go do what we got to do next, huh.

After this conversation Alvarez and Runco went to Runco's car. He unlocked the trunk and produced a briefcase containing packages of money. When it appeared to Alvarez that there was over $100,000 he told Runco that it looked good and he would make the cocaine available. Alvarez added that he would get the key for the

storage facility where the cocaine would be stored. Alvarez also gave him the key to the hotel room they had just left. Runco was arrested as he walked in the direction of the hotel.

## ANALYSIS

■ Runco contends that his conviction is inconsistent with the jury's acquittal of him of both possession and of attempted possession of the one kilo of cocaine in the hotel room. There is no inconsistency. The kilo in the hotel was an extra, not part of the 20 which Runco had agreed to acquire. On the basis of the evidence before it the jury could rationally have found that Runco had not agreed to buy this extra kilo but had agreed to take the 20 kilos to be delivered later.

■ Runco contends that, at most, he was preparing to commit a crime, but that he had not engaged in an actual attempt. The line between preparation and attempt is "the most difficult problem" in defining the law of attempt. ALI, Model Penal Code, § 5.01, comment 5. There is necessarily an "element of imprecision" in any general formulation of the distinction. *Id,* comment 6. Every attempt includes acts of preparation, but not every act of preparation is an attempt. Courts must case by case prick out the line that separates them.

Acts that constitute an attempt must be done purposefully and constitute a substantial step in the course of conduct planned to culminate in the commission of the crime. *Id.* § 5.01(1)(c). Preparation alone is not enough. There must be "some appreciable fragment of the crime" in progress. *United States v. Buffington,* 815 F.2d 1292, 1302 (9th Cir.1987) (quoting *United States v. Mandujano,* 499 F.2d 370, 376 (5th Cir. 1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975)). The conduct to be punishable "must be necessary to the consummation of the crime and of such nature that a reasonable observer, viewing it in context, could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *Buffington, supra,* at 1303.

Runco's acts were of this character. He agreed to purchase 20 kilos of cocaine at $15,000 per kilo. He showed the undercover agent the money necessary to establish his credit. These actions were not equivocal. They were necessary steps to the commission of the crime of possessing the 20 kilos of cocaine.

Runco relies on *Buffington, supra,* which held that three men with guns and disguises in proximity to a bank were not guilty of attempting to rob the bank. But a large part of their acquittal depended upon ambiguity as to what they intended to rob—a federal bank, a store, or a state bank. *Id.* at 1303. No similar ambiguity characterized Runco's conduct. Moreover, in *Buffington,* with the exclusion of informants' testimony, the evidence of intent was weak. Here Runco's own statements showed his intent.

Runco also invokes *United States v. Joyce,* 693 F.2d 838 (8th Cir.1982). In that case, Joyce flew from Oklahoma City to St. Louis in order to purchase drugs from an undercover agent. The agent took him to a hotel room and showed him a wrapped plastic package he said contained a kilo of cocaine. Joyce said he could not see the cocaine. The agent declined to open the package until Joyce showed his money. An impasse resulted and Joyce left the hotel without seeing the cocaine or agreeing to purchase it. He was arrested as he left the hotel. Although there was evidence that Joyce had taken several steps in the direction of committing the crime, he had ultimately refused to go ahead with the deal. The court observed that his intention to procure cocaine had been "abandoned." *Id.* at 841. In contrast, Runco agreed to the price, sampled the cocaine, and showed the cash that would assure possession of his purchase. The facts are close to the facts found to constitute an attempt in *United States v. DeRosa,* 670 F.2d 889, 894 (9th Cir.), *cert. denied,* 459 U.S. 993, 1014, 103 S.Ct. 353, 372, 74 L.Ed. 2d 391, 507 (1982).

AFFIRMED.