UNITED STATES of America, Plaintiff,

v.

Willie Lee DIXON, et al., Defendants.

Crim. No. MJG–90–0128.

United States District Court,
D. Maryland.

July 31, 1990.

Breckinridge L. Willcox, U.S. Atty., Carmina S. Hughes and Robert Thomas, Asst. U.S. Attys., Baltimore, Md., for plaintiff.

Steven Dunn, for defendant Dixon.

Michael Marr, for defendant O'Dell.

James K. Fowley, for defendant Brown.

Fred Warren Bennett, Federal Public Defender, for defendant Hawkins.

GARBIS, District Judge.

On March 29, 1990, the United States indicted defendants Willie Lee Dixon, Aubrey Bernard Brown, Clarence Mann Hawkins, and Billy Carmen O'Dell for attempted bank robbery in violation of 18 U.S.C. § 2113(a), and for the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). After joint motions to suppress were filed and denied all defendants waived their Sixth Amendment right to a jury trial. Consequently, this case was tried to the Court without a jury on June 12 and 13, 1990. Pursuant to Fed.R. Crim.P. 23(c), the Court now renders findings of fact and judgments.

## I. FACTUAL FINDINGS

There are few basic factual disputes in this case. The issues arise over the conclusions to be reached by applying the governing legal standard to largely undisputed facts. On March 28, 1990, at approximately 11:00 a.m., the employees of the Maryland National Bank at 6800 Harford Road in Baltimore ("the bank") were notified by a customer that three men were acting suspiciously outside the bank. The bank manager spoke to the customer who explained that she had seen three black middle-aged males walking out of an alley behind the bank, and that one of them carried a blue duffel-type bag, possibly concealing a weapon. The manager promptly notified the Federal Bureau of Investigation (FBI), which dispatched several agents to investigate.

Upon their arrival at the bank, the FBI agents debriefed several employees, spoke

with the customer and awaited the return of the suspects for a while. Eventually, at approximately 1:40 p.m. or so, the agents left. Just a few minutes later the three black males returned. Several bank employees noticed them and all felt that they were clearly "casing" the bank. The manager again called the FBI, which told her to lock the front doors of the bank. As the three men began to move toward the bank entrance, the assistant manager locked the doors. Shortly thereafter, the three men came to the door and tried to enter, pulling on the doors, but to no avail. They then left. One of these three men was later identified as defendant Willie Lee Dixon. Mr. Dixon was carrying the blue bag with his hand held in a manner which indicated that he was carrying a gun inside the bag. Shortly after Dixon and the others left, the FBI agents returned.

Based on these events, as well as a series of recent bank robberies by unidentified black males in the area, FBI Special Agents Hedges, Wichner, Dougher, and O'Hara decided to stake out the Maryland National Bank branch at 6800 Harford Road on the morning of March 29, 1990. Before leaving for the bank on March 29, Agent Wichner reviewed surveillance photographs of recent bank robberies. On arrival at the area of the bank, the FBI agents set up surveillance posts in automobiles and were in position prior to the 9:00 a.m. bank opening.

On the morning of March 29, 1990, defendant Hawkins met defendants Dixon and O'Dell at the corner of Broadway and Eager Streets in Baltimore several miles from the bank. Mr. O'Dell was driving a brown Thunderbird that bore improper license plates, i.e. plates that belonged on another vehicle.[1] Hawkins got into the car, at which point they proceeded to pick up defendant Brown and drive up Harford Road toward the bank. The Thunderbird drove past the bank, turned left on the first street, made two more left turns and ended

---

1. The proper plates for this car (which was registered to a person with the last name of O'Dell) were in the trunk.

up stopping on Berwick Avenue, less than a block from the bank (at the corner of Berwick Avenue and Harford Road). Agent Wichner, who had been parked on Berwick Avenue, drove past the Thunderbird, recognized the driver (later identified as defendant O'Dell) as being the same person or very similar to the one he had seen earlier that morning in his review of bank robbery surveillance photographs.

Wichner notified the other agents of his observation by radio and circled the block, ending up parked on Berwick Avenue somewhat behind the Thunderbird. Other FBI agents moved in response to this radio message. After Agent Wichner, undetected by the defendants, drove past the brown Thunderbird, defendant Dixon exited the car from the front passenger seat, and walked east on Berwick Avenue, on through the bank parking lot and toward the front (Harford Road) side of the bank. Believing that he had been "made" (*i.e.* spotted as a law enforcement officer), FBI agent Dougher arrested Dixon and notified the other agents by radio. At this point, Agent Wichner, already back on Berwick Avenue, drove to the rear of the Thunderbird, got out armed with a shotgun and ordered the three defendants in the car to freeze and put their hands on the roof of the car. As the defendants complied, Agent Wichner observed surgical gloves on their hands. Agent Hedges, also armed with a shotgun, was on the scene to assist. The defendants were then ordered out of the car. They came out wearing pulled-up ski masks, gloves, and extra layers of clothing. Defendant Brown was found to have a 12–gauge sawed-off shotgun in his pants. A subsequent search revealed an additional weapon, a .38 handgun, under the front passenger seat, as well as additional surgical gloves, empty nylon bags, and, in the trunk, the proper set of license plates for the car.

## II.

### A. *Count One: Attempted Bank Robbery*

All defendants were indicted under 18 U.S.C. § 2113(a), which provides in relevant part that "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take ... money or any thing of value belonging to, ... any bank ... [s]hall be fined not more than $5,000 or imprisoned not more than twenty years, or both." The Fourth Circuit, in *United States v. McFadden*, 739 F.2d 149 (4th Cir.), *cert. denied*, 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984), defined the elements of attempt in Section 2113(a). Quoting from the Fifth Circuit decision in *United States v. Mandujano*, 499 F.2d 370 (5th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975), Judge Chapman, writing for a unanimous panel, adopted a two-part standard: "Initially, the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime he is charged with attempting. Then, the defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime, conduct strongly corroborative of the firmness of the defendant's criminal intent." 739 F.2d at 152 (quoting *Mandujano*, 499 F.2d at 377). Drawing on the Model Penal Code's definition of attempt, the Fourth Circuit outlined the "substantial steps" that would tend to corroborate criminal purpose:

lying in wait, reconnoitering the place contemplated for the commission of the crime, possession of materials to be employed in the commission of the crime, and possession and collection of materials to be employed in the commission of the crime at or near the place contemplated for its commission, where such possession and collection serve no lawful purpose of the actor under the circumstances.

*Id.* at 152.

In *McFadden*, the government possessed direct evidence of the intent of the defendants from secretly recorded conversations, which clearly demonstrated their intention to rob the bank in question. On appeal, the *McFadden* defendants argued that their convictions were invalid because their actions toward the bank lacked any force or violence. Rejecting that contention, the

panel found both intent and substantial steps corroborative of that intent: "the defendants discussed their plans to rob the banks, they reconnoitered the banks in question, they assembled the weapons and disguises necessary for use in the robbery and they proceeded to the area of the bank with a vehicle and a driver to be used in the getaway." *Id.*

Recognizing that the result in *McFadden* is unfavorable, the defendants maintain that in this case the government lacks sufficient evidence of specific intent to rob the bank. Although admitting to casing the bank and contemplating a robbery, the defendants maintain that they were scared off during their first drive-by and so lacked the requisite culpable intent. For support, they cite for this Court's consideration two decisions of the United States Court of Appeals for the Ninth Circuit. In *United States v. Buffington*, 815 F.2d 1292 (9th Cir.1987), the court found an absence of proof of intent to commit the substantive offense. There, the defendants had assembled disguises and weapons, visited the federally insured bank in question twice, and drove into a parking lot where several stores were located. Although the defendants had driven slowly around the bank and stared into it, the Ninth Circuit reversed the conviction, concluding that "[i]f intent to rob existed at all, it could easily have been directed against [another store], or the nearby state bank." 815 F.2d at 1302. Distinguishing Buffington's situation from other cases which involved testimony by informants or co-conspirators, the court emphasized that "[n]o defendant came within 50 yards of the bank.... The evidence is focused no more on [the bank] than other nearby institutions." *Id.*

Applying *Buffington*, the Ninth Circuit recently reversed another attempted bank robbery conviction in *United States v. Still*, 837 F.2d 871 (9th Cir.1988). Because Still admitted to the police his intent to rob the subject bank immediately after his arrest some 200 feet away, the court found that intent was clearly established. How-

ever, the court found a lack of substantial steps, noting that as in *Buffington* the defendant had made no movement toward the bank. The court concluded that Still's conduct "was too tentative and unfocused to constitute either the requisite 'appreciable fragment' of a bank robbery, or a step toward the commission of the crime of such substantiality that, unless frustrated, the crime would have occurred." 837 F.2d at 874 (citing *Buffington*, 815 F.2d at 1303).

■ These Ninth Circuit decisions do not present a different legal standard than does the Fourth Circuit's decision in *McFadden, supra.*[2] As this court interprets the authorities, to prove the crime of attempted bank robbery, the government must establish (1) the defendant's intent to commit the substantive offense (*i.e.* bank robbery), and also (2) that the defendant engaged in conduct constituting a substantial step toward the *commission* of the substantive crime at the time that the defendant had such intent. An action that comprises a substantial step toward the *commission* of the offense may constitute evidence of, and corroboration of, the requisite intent. *See* W. LaFave & A. Scott, Jr., *Handbook of Criminal Law*, § 59 n. 80 (1972). It is important, particularly in the context of this case, to bear in mind that the requisite intent must exist simultaneously with the taking of a substantial step toward the commission of the offense.

Each defendant must be judged separately in light of the evidence applicable to him. As to each, the question is whether he had the requisite intent and took a substantial step toward the commission of the offense. The Court is mindful that it is not deciding whether a jury verdict holding each defendant guilty may stand but is determining whether, in fact, there is a reasonable doubt as to the guilt of each defendant.

■ The Court has no reasonable doubt regarding the guilt of defendant Dixon. He demonstrated his intent to rob the bank by virtue of his actions on both March 28

---

**2.** It may well be that the Fourth Circuit, while stating the law in equivalent terms, would affirm the convictions which the Ninth Circuit reversed in *Buffington* and *Still*. In any event, this Court is, of course, obligated to apply the law as interpreted by the Fourth Circuit.

and 29. Dixon cased the bank on March 28, may well have attempted to rob it on that afternoon, and returned the next day with others who were equipped to rob it. There is no doubt that he had formed the intent to rob the bank no later than the afternoon of March 28 and continued to have the requisite intent until he became aware of the presence of law enforcement officers. In addition to possessing the intent, Dixon took substantial steps toward the commission of the offense including, but not limited to, proceeding to the bank on the morning of March 29 with companions equipped to rob the bank and stopping in close proximity to the bank ready, willing, and able to commit the offense.

▮ The Court has no reasonable doubt as to the guilt of defendant Brown. He objectively demonstrated his intent by the commission of an independent crime incident to the bank robbery, i.e., his obtaining and possessing a sawed-off shotgun. It cannot reasonably be said that, at least as of the time Mr. Brown took possession of the sawed-off shotgun and joined the others in the car to go to the bank, that he didn't possess the requisite intent to rob the bank. Nor is there any doubt that he took substantial steps toward the commission of the offense, including his possession of the sawed-off shotgun and his proceeding to the bank.

▮ The Court, also, has no reasonable doubt as to the guilt of defendant O'Dell. He objectively demonstrated his intent by committing an independent crime incident to the bank robbery, i.e., driving a vehicle with improper license plates. This action was taken to make identification more difficult and clearly demonstrated his commitment to the bank robbery. Nor, as with Mr. Brown, is there any doubt as to Mr. O'Dell's having taken substantial steps toward the commission of the offense.

▮ The case of defendant Hawkins presents, at least as to the intent element, a situation different from that of the other defendants. Hawkins testified that he had not, at any time, committed himself to robbing the bank. Rather, he has said, he went along with the others to look over the bank and to decide, after examination, whether to participate in the robbery. The line between preparation and attempt is "the most difficult problem" in defining the law of attempt. *See* Model Penal Code § 5.01, comment 5 (1985). There is necessarily an "element of imprecision" in any general formulation of the distinction. *Id.; see also United States v. Runco,* 873 F.2d 1230, 1232 (9th Cir.1989) ("Every attempt includes acts of preparation, but not every act of preparation is an attempt."). Unlike the other defendants, in the case of Mr. Hawkins there is no objective evidence which directly refutes his version of his state of mind. He had not (like Dixon) engaged in surveillance and other activities at the bank on March 28. Unlike O'Dell and Brown, he had not already committed a separate crime when he arrived on the scene on March 29. Were the Court deciding whether to sustain a jury verdict of conviction against Mr. Hawkins, there is little question that such a verdict, with all the inferences in favor of the government, would stand. Moreover, were this case decided under a preponderance of the evidence standard, this Court would not hesitate to find Mr. Hawkins guilty. However, in light of all of the evidence, the Court has a reasonable doubt that the government has proven the offense of attempted bank robbery against Mr. Hawkins.

Accordingly, for the above reasons stated, the Court acquits Hawkins but finds defendants Dixon, O'Dell, and Brown guilty of attempted bank robbery.

B. *Count Two: Possession of a Firearm*

▮ Having been acquitted on the underlying charge, defendant Hawkins may not be convicted of possession of a firearm during the commission of a crime of violence. *See Buffington,* 815 F.2d at 1304 ("The conviction of the offense in 18 U.S.C. § 924 falls of its own weight."). Accordingly, the Court finds Hawkins not guilty of Count II.

■ Regarding the remaining defendants, the Court now addresses the points raised on their motion for judgment of acquittal on Count II. Defendants maintain that (1) 18 U.S.C. § 924(c) does not apply to crimes of attempt, and (2) the indictment in this case failed to state an offense under § 924(c). Neither of these claims are persuasive.

Section 924(c) provides that

[w]hoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ..., be sentenced to imprisonment for five years....

18 U.S.C.A. § 924(c)(1) (West Supp.1990). The statute further defines a "crime of violence" as

a felony and ... has as an element the use, *attempted use,* or threatened use of physical force against the person or property of another, or ... that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* at § 924(c)(2)(A)–(B) (emphasis added). From this language, it is clear that § 924(c) targets not only the use of a firearm in the commission of a completed crime of violence, but also its use in crimes of attempt as well. *See, e.g., United States v. Bussey,* 507 F.2d 1096 (9th Cir.1974) (sustaining convictions for attempted bank robbery and possession of firearm in violation of § 924(c)).

Similarly unavailing is the attack on the government's indictment. Count II of the indictment alleged that the defendants "during and in relation to a crime of violence ..., to wit: the attempted bank robbery of the Maryland National Bank ..., did use and carry firearms, in violation of [18 U.S.C. § 924(c)]." The defendants maintain that this language only charges bank larceny under § 2113(b), which is not a crime of violence. A proper indictment, the defendants maintain, would have included a reference to the attempted taking "by intimidation from employees of the Maryland National Bank." While the government's indictment might have provided greater specificity, it is well established that an indictment is sufficient if it contains the elements of the offense charged and sufficiently apprises the defendant of what he must be prepared to meet. *Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); Fed.R.Crim.P. 7(c)(1). There is little question that Count II of the indictment met those requirements.

Having disposed of the legal objections to Count II, it is necessary to determine whether, on the evidence, the remaining defendants have been proven guilty.

■ Under § 924(c), several courts have noted that actual possession of a firearm is not necessary to establish liability. Rather, a person can "constructively" possess a firearm if the weapon is under his dominion or control.[3] *See United States v. Feliz–Cordero,* 859 F.2d 250, 253 (2d Cir.1988) (government must show that "gun is within reach during the commission of the drug offense"); *United States v. Matra,* 841 F.2d 837, 842 (8th Cir.1988) ("none of these items [weapons and ammunition] w[ere] in the actual possession of the defendant, but all were under his control"); *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985) (violation of § 924(c) possible if "the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute").

---

**3.** The Seventh and Ninth Circuits have found that the *Pinkerton* conspiracy doctrine applies to § 924(c) even if the use of the firearm was not the objective of the conspiracy. These courts thus found that members of a conspiracy either knew that a co-conspirator carried a gun or reasonably could have foreseen it. *United States v. Douglass,* 780 F.2d 1472, 1476 (9th Cir.1986); *United States v. Gironda,* 758 F.2d 1201, 1214 (7th Cir.), *cert. denied,* 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985). The government urges this Court to apply this doctrine here. However, no conspiracy count was charged in this case, and the government points to no authority that would suggest extending the *Pinkerton* doctrine outside the conspiracy realm. *Cf. Douglass,* 780 F.2d at 1476 (existence of a drug conspiracy "especially relevant").

 As Brown was in actual possession of the sawed-off shotgun when arrested, there is no question of his guilt and he is hereby found guilty on Count II. Dixon, before he left the car to enter the bank parking lot, was sitting in the front passenger seat of the vehicle with a gun at his feet. The evidence established that Hawkins did not possess the gun, that Brown had a shotgun on his person and that O'Dell was strictly a driver. Hence, the conclusion that Dixon possessed the gun and intended to use it in the course of the planned bank robbery is inescapable. Additionally, this Court finds beyond a reasonable doubt that Dixon exercised a knowing control over the weapon that was found underneath the passenger front seat. *See United States v. Brockington*, 849 F.2d 872, 874 (4th Cir.1988) (sustaining § 924(c) conviction where defendant arrested with fully-loaded pistol "under the floormat directly beneath [the defendant's] seat in the cab").

 Defendant O'Dell presents a more difficult case. When arrested, he did not physically possess a firearm. A weapon was found underneath the front passenger's seat. It is not clear from the evidence that the weapon was sufficiently close to O'Dell to be within his dominion and control. In *United States v. Bernal*, 719 F.2d 1475 (9th Cir.1983), the only evidence connecting Bernal, one of the defendants, with a firearm was the testimony of a DEA agent that a gun was found on the seat next to Bernal in a car occupied by him and another person. Relying on a Nevada Supreme Court case,[4] the Court of Appeals reversed the § 924(c)(2) conviction, concluding that the evidence left open the inference that Bernal did not possess the weapon. This Court reaches a similar conclusion with respect to O'Dell.

Accordingly, this Court has decided to acquit defendant Hawkins and O'Dell on

Count II, but finds defendants Brown and Dixon guilty of violating § 924(c).

For the above stated reasons:

1. Defendant Dixon has been convicted on Count I and Count II.
2. Defendant Brown has been convicted on Count I and Count II.
3. Defendant O'Dell has been convicted on Count I and acquitted on Count II.
4. Defendant Hawkins has been acquitted on Count I and Count II.

---

4. *See Woodall v. State*, 97 Nev. 235, 627 P.2d 402 (1981). The court relied on state law because the prior version of § 924(c) prohibited the "unlawful" carrying of a firearm during the commission of "any felony." The statute provided that "unlawfulness" could be decided by state or federal law.