**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 96-4956

FRED LENARD MORRISON,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CR-96-334)

Argued: December 5, 1997

Decided: January 20, 1998

Before LUTTIG and MOTZ, Circuit Judges, and
JONES, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Dwight L. Thomas, Wanda Sherelle Jackson, Atlanta,
Georgia, for Appellant. E. Jean Howard, Assistant United States
Attorney, Greenville, South Carolina, for Appellee. **ON BRIEF:**
J. Rene Josey, United States Attorney, Greenville, South Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On September 24, 1996, a jury convicted Fred Lenard Morrison of both possession of cocaine with the intent to distribute and possession of crack cocaine, in violation of 21 U.S.C.A. § 841(a)(1) (West 1997). Morrison appeals his convictions, urging that the district court erred in all phases of the prosecution, from the refusal to suppress seized evidence, through jury selection and the admission of evidence, to jury instructions and deliberations. Morrison also maintains that insufficient evidence supported his convictions, and that the trial judge demonstrated hostility and bias toward him. Finding no error, we affirm.

I

While driving on I-85 in Greenville County, South Carolina, on April 18, 1996, at approximately 2:30 a.m., Morrison was stopped by a state highway patrol officer because of his erratic driving behavior. The officer testified at the suppression hearing below that after about five to seven minutes, when he had been satisfied that Morrison was not intoxicated, he had returned Morrison's license. While Morrison was then free to go, he instead consented, both verbally and in writing, at the request of the officer, to a search of the automobile. Another officer, who later arrived at the scene and was present when Morrison signed the written consent-to-search form, also testified that Morrison had signed the form voluntarily after it had been read aloud to him. With the aid of a drug dog, the officers then uncovered a brown paper bag in the car's trunk, containing two freezer bags of cocaine. The search of the car also produced a loaded pistol and a marijuana cigarette. Morrison himself was searched, and $2,800 in cash was found in his pants pocket.

Morrison argues that the district court erred in denying his motion to suppress the cocaine seized from the automobile trunk. Morrison

2

maintains that once the purpose for the traffic stop had been met, the police had no further legitimate basis to detain him. Morrison testified below that the police had not returned his license to him prior to his consent and thus he had not believed himself free to go. Accordingly, Morrison claims that both his verbal and written consent to search were not truly voluntary but were tainted by his improper continued detention.

We find this argument unpersuasive. Voluntariness is a factual question and a finding of such consent may be overturned on appeal only if clearly erroneous. United States v. McKinnon, 92 F.3d 244, 246-47 (4th Cir. 1996), cert. denied, 117 S. Ct. 784 (1997); United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996) (en banc). In this case, the police officers' testimony presented sufficient evidence on which the district court could base its finding that Morrison voluntarily consented to the vehicle search.

II

Morrison submits that the district court erred in refusing to propound voir dire questions to the jury regarding racial bias. A trial judge's refusal to ask requested voir dire questions is reviewed only for an abuse of discretion. United States v. Brooks, 957 F.2d 1138, 1144 (4th Cir. 1992). It is settled that the failure to honor a request to voir dire potential jurors about racial bias will only constitute reversible error "where the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury," Rosales-Lopez v. United States, 451 U.S. 182, 191 (1981), or when such issues are "inextricably bound up with the conduct of the trial." Ristaino v. Ross , 424 U.S. 589, 597 (1976).

Morrison contends that since society holds racial stereotypes about criminals, as a black defendant charged with drug offenses, he faced a reasonable possibility of racial bias and was accordingly entitled to inquire about jurors' racial attitudes. However, as this court recently held, the existence of prejudice against minority defendants cannot be presumed and "every criminal trial cannot be conducted as though race is an issue simply because the trial participants are of different races." United States v. Barber, 80 F.3d 964, 967 (4th Cir.) (en banc), cert. denied, 117 S. Ct. 198 (1996).

3

III

Morrison next claims that the trial court erred in denying his motion to strike certain expert witness testimony pursuant to rule 16(d)(2) of the Federal Rules of Criminal Procedure.

Morrison contends that defense counsel did not have adequate time to review two experts' reports and research the credentials of one of the authors, an expert witness who identified the substance seized as cocaine. However, the government showed that the defense had been provided with the reports as soon as they had become available and that the defense had known of the identity of the expert witness well before trial. Accordingly, the defense had ample opportunity to investigate the expert's background and research techniques and the trial court correctly found that the prosecution had not made untimely discovery. Moreover, Morrison "never asked for a recess, let alone a continuance, to give [him] an opportunity to review the report[s]." United States v. Kubiak, 704 F.2d 1545, 1552 (11th Cir. 1983). Since any prejudice allegedly suffered by Morrison could have been avoided by less drastic means than excluding the evidence, and since Morrison never requested any such measures, the court did not abuse its discretion in refusing to strike the expert testimony.

IV

Morrison argues that the trial court should not have admitted, under Federal Rules of Evidence 404(b), evidence of two of his prior drug offenses.[1] He contends that the evidence was more prejudicial than probative, and that it should have been excluded because the government gave the defense insufficient and untimely notice of its intent to use the evidence.

_____

[1] One of the prior offenses was uncovered by a warrant search of a residence in Lenoir, North Carolina, in 1989. Morrison and four other persons were found in the living room and Morrison was discovered to be in possession of 23 grams of marijuana and 5.4 grams of powder cocaine, along with $682 in cash. The second offense occurred in 1995, also in Lenoir, when a police officer, after a traffic stop, found 30 grams of marijuana and $900 in cash on Morrison's person and another $1,336 in a shoe in the car driven by Morrison.

A district court's decision to admit 404(b) evidence is discretionary and should not be disturbed unless arbitrary or irrational. United States v. Greenwood, 796 F.2d 49, 53 (4th Cir. 1986). In this case, the court's decision that Morrison's prior offenses were relevant to combat his denial of intent to possess and distribute drugs was not arbitrary or irrational and was not an abuse of discretion. See United States v. Rhodes, 779 F.2d 1019, 1031 (4th Cir. 1985); United States v. Heyward, 729 F.2d 297, 301 n.2 (4th Cir. 1984).

Morrison's argument that his prior arrests for drug possession are too dissimilar to the present case to be relevant is entirely unpersuasive. The trial court reasonably concluded that given the defense claim that Morrison did not know that drugs were in the car he was driving (which was owned by his girlfriend) and that he thus lacked intent to possess or distribute drugs, the prior drug offenses were probative to show his intent and knowledge of the drug trade. See United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991).

It is within the trial court's discretion to balance the potential prejudice to a criminal defendant against the probative nature of any evidence, including 404(b) evidence. Fed. R. Evid. 403. In this case the court made reasonable efforts to limit any potential prejudice by giving both a limiting and a final instruction informing the jury that they should not consider the prior offenses as evidence of the defendant's propensity to commit crimes; thus the court's decision to admit the 404(b) evidence was not an abuse of discretion.

Rule 404(b) does not specify the type of notice the government is required to give the defense; it merely requires that the defense be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown." Fed. R. Evid. 404(b). Although a prosecutor had earlier informed defense counsel that the government did not intend to use 404(b) evidence in the case, the prosecution team changed during the course of trial preparation, and the new attorney for the government decided that she would, in fact, use evidence of Morrison's past drug crimes. On September 18, 1996, the government faxed to the defense records of four prior drug offenses by Morrison, which occurred respectively in 1985, 1988, 1989 and 1995, and communicated its intent to introduce 404(b) evidence of Morrison's 1985 and 1988 offenses at trial. The next day,

5

September 19, the prosecution gave oral notice that it also intended to use evidence of the 1989 offense. Finally, on the morning of trial, September 23, prior to opening statements, the government withdrew its notice of intent to use evidence regarding the 1985 and 1988 offenses, repeated its intent to use evidence regarding the 1989 offense, and for the first time, gave notice of its intent to introduce evidence of the 1995 offense.

Despite Morrison's claims that he was "sandbagged" by the prosecution's changed plans to use 404(b) evidence, it is not unexpected for a party to change its trial strategy in the days leading to trial. In this case, it appears that the prosecution informed the defendant of its intent to use 404(b) evidence as soon as such plans evolved, and there is no question but that the defendant had notice four days prior to trial of the government's intent to introduce evidence of three of Morrison's prior drug offenses. The sole issue is thus whether Morrison suffered unfair prejudice and undue surprise from the prosecution's announcement, on the morning of trial before opening statements, that it now wished to introduce evidence of the defendant's 1995 offense. We find that under the circumstances in this case, the trial judge did not err in allowing the prosecution to make this substitution of 404(b) offenses. Not only was defense counsel already aware of the 1995 crime (the government faxed the arrest record on September 18), but defense counsel was also aware that the prosecution intended to use evidence of Morrison's 1985, 1988 and 1989 offenses. While in some cases a defendant might suffer undue prejudice by the government's substitution of one prior bad act for another, Morrison has not shown that the 1995 offense differed in any significant respect from his other prior crimes. Accordingly, Morrison suffered no prejudice from the government's use of the 1995 crime rather than the 1985 or 1988 offenses.**2**

_____

**2** Although defense counsel contends that he lacked time to prepare a strategy to diffuse the effect of this new 404(b) evidence, counsel agrees that he did in fact argue to the jury that the defendant's prior offenses were dissimilar to the current charge and were thus irrelevant.

Morrison also argues that the literal language of rule 404(b) was violated as far as notice is concerned because the jury had been selected - and thus the trial had begun - on September 4. However, the record is clear that the jury was not sworn until September 23, the morning of trial.

V

Morrison raises several complaints concerning the trial court's instructions to the jury. Morrison argues that the judge erroneously instructed the jury regarding the meaning of "knowingly and intentionally," erroneously instructed them about a theory of "joint possession" that was not expressly argued by the parties, and erroneously instructed them not to draw "any" inference from Morrison's decision not to testify and not to offer evidence.[3] In addition, Morrison maintains that when, shortly after leaving to deliberate, the jurors returned to ask if they had to reach a unanimous verdict, the judge erred in failing to remind them not to surrender an honest opinion simply to reach a verdict.

A district court's decision whether to give or not give a jury instruction, and the court's framing of jury instructions, are to be reviewed for abuse of discretion. United States v. Abbas, 74 F.3d 506, 513 (4th Cir.), cert. denied, 116 S. Ct. 1868 (1996) (citing United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992)). Jury instructions must be viewed in their entirety and in the context of the whole trial to determine if there was an abuse of discretion. United States v. Park, 421 U.S. 658, 674 (1975). Morrison fails to show any possible way in which the challenged jury instructions would constitute an abuse of discretion and we reject these challenges as entirely without merit.

VI

Morrison maintains that the jury, during deliberations, should not have had access to a police video tape of the search that was introduced into evidence in its entirety but was only played in part by the government during trial. This objection is without merit. Morrison has failed to demonstrate that having access to the entire video tape likely caused the defendant any prejudice. See United States v. Griley, 814

_____

**3** Morrison would have had the judge instead instruct that the jury should draw no "adverse inference."

7

F.2d 967, 975 (4th Cir. 1987) (citing United States v. McFadden, 739 F.2d 149, 153 (4th Cir. 1984)).**4**

## VII

Morrison argues that his convictions should be overturned on the ground that they were not supported by sufficient evidence. This argument must fail. A conviction is adequately supported if substantial evidence, taken in the light most favorable to the government, supports the verdict. Glasser v. United States , 315 U.S. 60, 80 (1942). Here, the jury could have reasonably found from the officers' testimony, in conjunction with the narcotics uncovered and Morrison's past involvement with drugs, that Morrison committed the offenses.

## VIII

Finally, Morrison asserts that the trial judge's behavior toward him was hostile and prejudicial, and at the least, warranted an evidentiary hearing on his motion for a new trial.

During trial, the government sought to ask the highway patrol officer who had seized the drugs whether he had "ever seized this amount of substance before." Morrison's counsel interposed an objection, which the trial judge sustained. Defense counsel then moved for a mistrial, which the judge denied. Thereafter, out of the presence of the jury, Morrison's attorney again moved for a mistrial, on the ground that the trial judge had denied the earlier motion"in a hostile manner."**5**

_____

**4** In his brief, Morrison maintains that later portions of the tape should have been inadmissible because they contained "bolstering statements" made by the police officers regarding Morrison's change in demeanor during their search of the automobile. If indeed this is the basis for appellant's objection to the video, it is meritless, since any such statements made at the time of arrest would constitute prior consistent statements which the jury could consider to corroborate the police officers' testimony at trial. Fed. R. Evid. 801(d)(1)(b).

**5** At trial, defense counsel characterized the judge's demeanor thus: "Before I could even get the motion for mistrial out, the court was leaning over, expressing in his face, in open, loud terms, a hostile manner." (J.A. 161.) The transcript of the colloquy, however, simply shows as follows:

8

Despite the difficulty in reviewing voice and expression from a written record, we reject Morrison's claim that he was denied a fair and impartial trial by these circumstances. First, even if Morrison's characterization of the incident was accepted, it encompassed only the briefest part of the trial. Moreover, the judge included a jury instruction seeking to cure any inadvertent signals of judicial preference that the jury might have observed.[6]

Only when a trial judge exhibits, through remarks or actions at trial, "such a high degree of favoritism or antagonism as to make fair judgment impossible," Liteky v. United States, 510 U.S. 540, 555 (1994), is reversal warranted. No such showing has been made here and the trial judge was justified in denying Morrison's motion for a new trial without a hearing.

IX

Upon careful consideration of all of the appellant's contentions, the judgment below is

AFFIRMED.

_____

> MR. THOMAS: Your Honor, I'm going to move for a mistrial on that basis. If that's used to try to prejudice the case, I'm going to move --
>
> THE COURT: I sustained your objection.
>
> MR. THOMAS: I also moved for a mistrial, Your Honor.
>
> THE COURT: Your motion for a mistrial is overruled.
>
> MR. THOMAS: Thank you, sir.
>
> THE COURT: You may ask the next question.

(J.A. 153.)

[6] This instruction informed the jury that "during the course of this trial, I occasionally make comments. . . . Do not assume from anything I may have said or done . . . that I have any opinion concerning any of the issues in this case. Except for my instructions to you on the law, . . . disregard anything I may have said or done during the trial in arriving at your own findings as to the facts." (J.A. 493.)

9