**UNITED STATES of America, Appellee,**

v.

**Clarence STALLWORTH and Johnny Sellers, Defendants-Appellants.**

**Nos. 297, 307, Dockets 76–1275, 76–1276.**

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1976.

Decided Oct. 21, 1976.

Daniel H. Murphy, II, New York City, for defendant-appellant Stallworth.

Michael B. Pollack, New York City, for defendant-appellant Sellers.

Paul F. Corcoran, Asst. U.S. Atty. (David G. Trager, U.S. Atty., Eastern District of New York, Brooklyn, of counsel), for appellee.

Before KAUFMAN, Chief Judge, and MOORE and MANSFIELD, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

Although we affirmed appellants' convictions for attempted bank robbery, 18 U.S.C. § 2113(a),[1] in open court, we believe that since the question is one likely to present itself to district courts not infrequently it is prudent to discuss briefly the perplexing problem of distinguishing "mere preparation" for the commission of a crime from an "attempt."

Since an understanding of the facts is critical to any consideration of inchoate crimes, we summarize the pertinent events culminating in the arrest. Rodney Campbell, a convicted bank robber, agreed to cooperate with the F.B.I. on January 12, 1976 in return for a grant of immunity from prosecution for four armed bank robberies in which he admittedly participated between June and September, 1975. Arrangements were made for Campbell to use an undercover Government vehicle, provided with a tape recorder and monitoring equipment, to assist the authorities in apprehending some of his former accomplices. Campbell consented to the tape recording of all conversations taking place in his car.

After reestablishing contact with individuals named Larry Peterson, Willie Young, and appellant Johnny Sellers, Campbell transported the men in his specially equipped vehicle as they reconnoitered several banks in Queens, New York. The group began actual preparations for a robbery on Wednesday, January 21, by stealing ski masks from a department store. Later that day Peterson and Young appropriated surgical gloves from a hospital while Sellers, a recent patient, engaged several nurses in conversation. Finally, Peterson purchased a hacksaw and roofing nails which, he told Campbell, he needed to "fix" a shotgun.

On January 22, Sellers, Peterson, Young and Campbell perfected their plan to rob a branch of the First National City Bank in Whitestone, Queens. Peterson, formerly a factory worker in the neighborhood, advised the group that on Fridays (in this instance, January 23) large amounts of money would be on hand to accommodate industrial employees in cashing their salary checks. Young entered the bank on Thursday afternoon to examine its internal physical structure and reported to his colleagues that the tellers' counters were of average height and security was thin. The participants agreed to recruit appellant Clarence Stallworth to drive the getaway car.

On Friday morning Stallworth joined Young and Sellers, to whom he handed a .38 calibre revolver, and assumed the role of driver. Peterson met his comrades, gave them a sawed-off shotgun and distributed other paraphernalia required for the crime. En route to the bank in Whitestone the occupants of the Government-owned automobile covered their fingers with band-aids, their hands with surgical gloves and donned the ski masks. They prepared to destroy the vehicle after the robbery by stuffing gasoline-soaked newspapers under the seats.

The target bank was located in a small shopping center. As the car entered the parking lot, Sellers alighted and strolled past the bank several times, peering inside at each opportunity, as his accomplices circled the shopping center. At approximately 11 A.M., Stallworth stopped the vehicle directly in front of the bank. Sellers, who had stationed himself at an adjacent liquor

---

1. The federal criminal code, unlike some state counterparts, *see* New York Penal Law § 110.-00, does not contain a general provision for the crime of attempt. *But see, e. g.,* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. 91–513, Title II, § 406, 21 U.S.C. § 846. Attempted bank robbery is, however, an offense under federal law:

   Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank . . . . Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both. 18 U.S.C. § 2113(a).

store, started to approach the bank. Simultaneously, Campbell said, "let's go," and the occupants of the car reached for the doors. At this point, F.B.I. agents and New York City policemen, who had saturated the area as a result of intelligence acquired through the would-be robbers' monitored conversations, arrested the men without incident.[2]

■ Appellants contend that their conduct, while admittedly sufficient to sustain a conspiracy conviction, punishable by a maximum of five years incarceration, will not support a judgment of attempted bank robbery, carrying a potential twenty-year prison term.[3] They argue that their activities did not transcend a hypothetical fixed point on a spectrum of conduct culminating in the substantive offense of bank robbery. Thus, appellants assert they cannot be convicted of attempted bank robbery because they neither entered the bank nor brandished weapons. We reject this wooden logic. Attempt is a subtle concept that requires a rational and logically sound definition, one that enables society to punish malefactors who have unequivocally set out upon a criminal course without requiring law enforcement officers to delay until innocent bystanders are imperiled.

■ The classical elements of an attempt are intent to commit a crime, the execution of an overt act in furtherance of the intention, and a failure to consummate the crime. The Fifth Circuit in *United States v. Mandujano*, 499 F.2d 370 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975), has properly derived from the writings of many distinguished jurists[4] a two-tiered inquiry to determine whether given conduct constitutes an attempt. Initially, the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime he is charged with attempting. Then, the defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime, conduct strongly corroborative of the firmness of the defendant's criminal intent. *Id.*, at 376–77. We note that the Fifth Circuit's analysis conforms closely to the sensible definition of an attempt proffered by the American Law Institute's Model Penal Code.[5] *See also* ALI's treatment of "recon-

2. Stallworth and Sellers were indicted with Young and Peterson for attempted bank robbery and for placing lives in jeopardy during an attempted bank robbery, 18 U.S.C. § 2113(d). The second count against both appellants was dismissed at the close of the Government's case. Young and Peterson pleaded guilty prior to trial and, together with several F.B.I. agents, testified for the prosecution. The taped conversations between appellants and their accomplices were also admitted into evidence.

3. Sellers, in fact, was sentenced to a term of ten years imprisonment to run consecutively to a prior 1972 bank robbery conviction on which his parole was violated. Stallworth was sentenced to six years incarceration.

4. According to Cardozo, a suspect's conduct must "carry the project forward within dangerous proximity to the criminal end to be attained." *People v. Werblow*, 241 N.Y. 55, 148 N.E. 786 (1925). And Learned Hand surveyed the law of attempt in *United States v. Coplon*, 185 F.2d 629, 633 (2d Cir. 1950), *cert. denied*, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952), quoting one of the opinions of Justice Holmes:

> Preparation is not an attempt. But some preparations may amount to an attempt. It is a question of degree. If the preparation

comes very near to the accomplishment of the act, the intent to complete it renders the crime so probable that the act will be a misdemeanor, although there is still a locus poenitentiae, in the need of a further exertion of the will to complete the crime. [*Commonwealth v. Peaslee*, 177 Mass. 267, 272, 59 N.E. 55 (1901)]

5. The relevant portion of the Model Penal Code provides:

> Section 5.01. Criminal Attempt.
>
> (1) *Definition of Attempt.* A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
>
> (a) purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or
>
> (b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such result without further conduct on his part; or
>
> (c) purposely does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission con-

noitering the place contemplated for the commission of the crime" and "possession . . . of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession . . . serves no lawful purpose . . ." under the subtitle "Conduct Which May Be Held Substantial Step Under Subsection (1)(c)."

Application of the foregoing to the instant case emphasizes the importance of a rule encouraging early police intervention where a suspect is clearly bent on the commission of crime.[6] The undisputed testimony of Campbell and Young established that appellants intended to execute a successful bank robbery. Moreover, Stallworth and Sellers, in furtherance of their plan, took substantial steps that strongly corroborated their criminal intent. They reconnoitered the bank, discussed (on tape) their plan of attack, armed themselves and stole ski masks and surgical gloves. The getaway car was carefully prepared for destruction. As Sellers moved ominously toward the bank and Campbell uttered a verbal signal to his accomplices, a bank robbery was in

progress. A jury could properly find that preparation was long since completed. All that stood between appellants and success was a group of F.B.I. agents and police officers. Their timely intervention probably prevented not only a robbery but possible bloodshed in an area crowded with noontime shoppers.

We note in closing that federal courts have upheld convictions for attempted bank robbery without evidence of either an assault, *United States v. Foster*, 478 F.2d 1001 (7th Cir. 1973), or actual entry into the target bank, *United States v. Bussey*, 507 F.2d 1096 (9th Cir. 1974). Cases such as these, however, should not divert a court from consideration of the rational policies underlying the attempt doctrine. Because the conduct of Stallworth and Sellers constituted an attempted bank robbery, the convictions must be affirmed.[7]

stituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

(2) *Conduct Which May Be Held Substantial Step Under Subsection (1)(c)*. Conduct shall not be held to constitute a substantial step under Subsection (1)(c) of this Section unless it is strongly corroborative of the actor's criminal purpose. Without negativing the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law:

(a) lying in wait, searching for or following the contemplated victim of the crime;

(b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

(c) reconnoitering the place contemplated for the commission of the crime;

(d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

(e) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances;

(f) possession, collection or fabrication of materials to be employed in the commission

of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;

(g) soliciting an innocent agent to engage in conduct constituting an element of the crime.

Model Penal Code (Proposed Official Draft 1962).

6. We need not comment on appellants' contention that we are obliged to consider the potential severity of punishment in determining whether an attempted crime has materialized. Suffice to say that arguments urging the classification of an attempt as a lower grade of crime than the actual substantive offense should be addressed to Congress, and not this court. *See, e. g.*, Kadish and Paulsen, *Criminal Law and Its Processes* 368–69 (1969).

7. Although appellants did not specifically object to Judge Dooling's charge, we note that the jury was properly apprised of both the constituent elements of an attempt—intent and the necessity of "substantial and purposeful steps toward committing the crime . . . not reasonably explainable except as steps toward committing the crime."