*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  05a0331a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-1626

DONYAL WESLEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-80833—Robert H. Cleland, District Judge.

Argued:  April 26, 2005

Decided and Filed:  August 8, 2005

Before:  GUY, BATCHELDER, and GIBSON, Circuit Judges.[*]

_____

**COUNSEL**

**ARGUED:**  Jonathan Epstein, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant.  Daniel R. Hurley, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.  **ON BRIEF:**  Jonathan Epstein, Natasha D. Thompson, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant.  Saima S. Mohsin, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

GUY, J., delivered the opinion of the court, in which GIBSON, J., joined.  BATCHELDER, J. ( p. 9), delivered a separate dissenting opinion.

_____

**AMENDED OPINION**

_____

RALPH B. GUY, JR., Circuit Judge.  Defendant Donyal Wesley appeals his conviction and sentence on one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a).  Defendant argues that the evidence was factually and legally insufficient to support the conviction and that errors in the admission of evidence warrant a new trial.  Relying on *Blakely v. Washington*, 124 S. Ct. 2531 (2004), defendant also

_____

[*]The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

contends that the imposition of a career-offender enhancement under U.S.S.G. § 4B1.1 violated the Sixth Amendment.

In an initial opinion reversing defendant's conviction and remanding for new trial, we did not decide whether there was sufficient evidence to establish that the defendant committed an overt act that constituted a "substantial step" toward commission of the crime. Defendant argues in his petition for panel rehearing, and the government concedes, that we must decide the sufficiency of the evidence issue even though we have found another ground for reversal that would not preclude retrial. *United States v. Quinn*, 901 F.2d 522, 529 n.5 (6th Cir. 1990).

Because the issue has been fully briefed, we **DENY** the petition for rehearing and **AMEND** our prior opinion to explicitly find that, when the evidence and reasonable inferences are taken in the light most favorable to the government, a rational juror could find all of the essential elements were established beyond a reasonable doubt. Accordingly, after review of the evidence and the applicable law, we **REVERSE** defendant's conviction and **REMAND** for new trial.

## I.

The investigation into the attempted robbery of the Stockbridge State Bank, located in Stockbridge, Michigan, rested on the cooperation of Deborah Reid. Reid, who lived in Stockbridge, had met the defendant, Donyal Wesley, whom she knew as "T," several times at her sister Gina Caravino's house in Wayne, Michigan. One night in late August 2003, at 2:00 or 2:30 a.m., Wesley went to Reid's house and asked her very pointed questions about the bank. He asked if she banked there and about the vault, the tellers, the security, and the hours of operation. Reid told him she did her banking there; that there were no security guards; and that there were four tellers, one of whom was an elderly woman. Wesley became excited and, hitting his head, said: "[O]h my God, this is great." Wesley told her he would tell a good friend so they could rob the bank and asked Reid to drive the "getaway" car because she knew the roads in the area. Wesley said he wanted Reid to take him to see the bank. Although she did not agree to act as the driver, she told him she would "get back to him."

On September 2, 2003, Reid contacted Sgt. Patrick Lindberg of the Wayne Police Department to whom she had provided information on drug activities in the past. That night, at about 10:20 p.m., Reid called Wesley using three-way calling. Lindberg and other officers listened to their conversation. Although the recording device malfunctioned, Wesley was heard to say he wanted to meet with Reid to discuss the robbery and to go see the bank. Reid agreed to drive Wesley to Stockbridge to see the bank, but told him it would be too suspicious for him to go in. They planned to go the next morning, but Reid later delayed the trip at Lindberg's direction. Lindberg enlisted the help of FBI Special Agent Terry Booth, who had experience with bank robbery investigations, and Michigan State Police Detective Mike Logan, who had expertise with surveillance equipment.

On Thursday, September 4, 2003, Logan installed a wireless camera and microphone in Reid's car with the receiver and recorder hidden in the trunk. Followed by police, Reid drove to pick up Wesley at his residence in Romulus. Reid went into the house for a short time, then Reid drove Wesley and his daughter to the bank in Stockbridge more than an hour away. Reid testified that Wesley told her during the trip that they would need three people to go into the bank, one to watch the floor, one to "hit the tellers," and a third to "hit the vault." He explained that they would wear nylons or masks, carry guns covered by bags, and switch to a second stolen car to elude police after the robbery. Wesley told Reid, "your job, once we jump in that second car, get us the fuck out." When Reid asked if he meant to do it soon, Wesley answered "tomorrow" and asked if that was "soon enough." Reid answered that it was "[t]oo soon." Wesley told Reid that a "guy" told him to "make sure they don't push the button." When Reid asked again if he was sure about "tomorrow," Wesley replied that he was not sure but that he had been told the best days were Thursday, Friday or Saturday.

When they arrived at the bank, which was under police surveillance, Reid drove around the bank and stopped directly in front of the north entrance doors for about a minute. Reid testified that they could see that the vault was open. Photographs offered at trial confirmed that the vault was visible from outside the doors. Officer Thomas Warren of the Wayne Police Department was close enough to intercept the signal from the recording device in Reid's car. Warren overheard Reid saying that there were only two loan officers, one of whom was a "short, fat little bitch." Defendant said they could "park here in front of the doors and leave out that side street over there." After only a minute or two, Reid pulled the car away from the entrance, drove around the side of the bank, and stopped at the intersection with the side street. Reid then backed up and drove forward a few times, before driving away. Warren heard defendant say "the best way out of here is we can turn here and get out of here quick."

On the return from Stockbridge, Wesley had Reid stop at a friend's house in Ypsilanti, Michigan, to pick up some money before taking him home. Reid proceeded to the police department, where the videotape was removed. It was discovered that the tape had run only 60 minutes, probably because the camera was set to "standard" instead of "long" play. Driving noise and other interference made portions of the recording inaudible and the tape ran out before the trip was completed. Admission of the tape is the basis for two of the defendant's claims of error.

That night, around 8 p.m., Reid called Wesley at Agent Booth's request to try to find out when the robbery would occur. That conversation, made from a pay phone, was recorded and transcribed. Reid asked Wesley if he was "serious about doing that tomorrow." Wesley replied that he did not know because he "ain't even talked to nobody yet" and said he doubted it would be tomorrow. Reid asked if he was "for real," which made defendant challenge why she was asking this over the telephone. Wesley ended the conversation saying he was "at a standstill." Agent Booth felt the defendant had become suspicious, believed that a bank robbery was imminent, and was concerned that the defendant might change locations or accomplices. As a result, Agent Booth decided to get an arrest warrant.

On Friday, September 5, 2003, at about 2:45 p.m., defendant was arrested in front of his home in Romulus. No accomplices were present and no weapon or disguises were found. As the police approached, Wesley took something from his pocket, which he later admitted was Ecstasy, and ate it. Wesley did not make a written statement, but told Agent Booth that he had been to Stockbridge twice; once to buy marijuana in July 2003, and once when he went with Reid to see the bank. He told Booth that the real reason he went with Reid was to get a ride to Ypsilanti. Wesley admitted that he had talked about robbing the bank, but said he was too afraid to actually do it.

There was also evidence that Wesley had attempted to recruit someone else to participate in the robbery. William Carr—who was dating Reid's sister and had a prior conviction for armed robbery—was subpoenaed to testify to a conversation he had with Wesley in late August or early September 2003. Carr testified that he was buying drugs from Wesley one night, when Wesley said "he knows of a woman out at Stockbridge or Chelsea, or somebody, who knows a bank that could be robbed and wanted to know if I was interested, you know." Carr told defendant that he was not interested, but they discussed it for five or ten minutes.

Shortly before trial, defendant filed a motion *in limine* seeking to exclude the videotape made during the ride to Stockbridge because it was inaudible and unintelligible. After *in camera* review of the videotape recording and transcript, the district court found the audible portions were admissible. Defendant also sought to strike a passage from the tape making reference to his own prior incarceration. The district court found those statements were *res gestae* of the attempted robbery, rather than "other acts" evidence under Fed. R. Evid. 404(b).

Trial commenced on January 20, 2004, and the jury returned a verdict of guilty on January 24, 2004. Defendant moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29, which was denied at the close of the government's case and when renewed at the close of all the evidence. On April 27, 2004, defendant

was sentenced to a term of 225 months' imprisonment, to be followed by a three-year term of supervised release. This appeal followed.

## II.

### A.      Sufficiency of the Evidence

When considering a challenge to the sufficiency of the evidence to sustain a conviction on direct appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). We must also resolve all reasonable inferences in favor of the government. *United States v. Searan*, 259 F.3d 434, 441 (6th Cir. 2001). We may not, however, reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury. *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993).

### 1.      Actual Intimidation

Defendant argues that attempted bank robbery requires proof of "actual intimidation." *See* 18 U.S.C. § 2113(a) ("Whoever, by force and violence, or by intimidation, takes, or attempts to take, . . ."). Conceding that this argument is raised for the first time on appeal, defendant contends that the argument was not waived because his Rule 29 motion for judgment of acquittal was "general in nature." Specificity in a Rule 29 motion is not required. *United States v. Dandy*, 998 F.2d 1344, 1356 (6th Cir. 1993). When a defendant makes a motion on specific grounds, however, all grounds not specified in the motion are waived. *Id*. at 1357.

A similar waiver argument was addressed in *United States v. Chance*, 306 F.3d 356, 371 (6th Cir. 2002). There, the court found that although the colloquy focused on a specific area of the evidence, the motions were general in nature and the district court treated them as such by assessing the evidence as to each element of each crime. Here, the defendant's rule 29 motion challenged the sufficiency of the evidence to establish both elements of attempt. This, in the abstract, might seem to be a "general" challenge to the sufficiency of the evidence. In fact, defendant is arguing that there is an additional element to attempted bank robbery. For this reason, we find defendant's motion was not a general challenge to all the elements and this claim was waived by the failure to raise it in the Rule 29 motion. *See United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998).

Even if the issue had not been waived, however, we would find it to be without merit. On appeal, defendant relies on a Fifth Circuit decision, openly creating a split of authority, that held the most natural reading of the statute requires proof that the defendant actually committed an act of intimidation, or of force and violence, in order to be convicted of attempted bank robbery. *United States v. Bellew*, 369 F.3d 450 (5th Cir. 2004). That is, the court found the "attempt" relates only to the taking and not the intimidation.

This court has not specifically addressed this argument, but it has been squarely rejected by three other circuits. *See United States v. Stallworth*, 543 F.2d 1038, 1040 (2d Cir. 1976); *United States v. Jackson*, 560 F.2d 112, 116 (2d Cir. 1977); *United States v. McFadden*, 739 F.2d 149, 152 (4th Cir. 1984); *United States v. Moore*, 921 F.2d 207, 209 (9th Cir. 1990). Rejecting this argument as "wooden logic," the Second Circuit explained that:

> Attempt is a subtle concept that requires a rational and logically sound definition, one that enables society to punish malefactors who have unequivocally set out upon a criminal course without requiring law enforcement officers to delay until innocent bystanders are imperiled.

*Jackson*, 560 F.2d at 116 (quoting *Stallworth*, 543 F.2d at 1040). We agree that to read the statute as defendant urges would be inconsistent with our definition of attempt crimes, and would, without reason, require proof that a defendant actually confronted someone in the bank before he could be convicted of

attempted robbery.  We find the only reasonable interpretation is that the statute criminalizes attempted taking "by force or violence, or by intimidation."  Actual intimidation is not required to prove attempted bank robbery under the first paragraph of 18 U.S.C. § 2113(a).[1]

### 2.       Substantial Step

To convict a defendant of attempt, the government must prove (1) the defendant's intent to commit the criminal activity; and (2) that the defendant committed an overt act that constitutes a "substantial step" toward commission of the crime. *United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999).  Defendant argues, as he did in his Rule 29 motion, that the evidence was insufficient to establish that he took a substantial step toward commission of the robbery.[2]

"Because of the problems of proving intent in attempt cases and the danger of convicting for mere thoughts, desires, or motives, we require that the substantial step consist of objective acts that mark the defendant's conduct as criminal in nature." *Id.* (citing *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989)).  This objective conduct must unequivocally corroborate the required subjective intent to engage in the criminal conduct. *Id.*  Emphasizing that the "substantial step" requirement is an objective one, this court explained in *Bilderbeck* that

> under the "substantial step" analysis, an appellate court evaluates whether any reasonable person could find that the acts committed would corroborate the firmness of a defendant's criminal intent, assuming that the defendant did, in fact, intend to commit the crime.  The requirement does not mandate that the activity constituting a substantial step must be *sufficient* to prove that the defendant had the subjective, specific intent to commit a crime.  The intent may need to be proven separately.

163 F.3d at 975.

Arguing that his actions represented "mere preparation," as opposed to a substantial step toward the commission of the crime, defendant emphasizes that he was arrested at his home an hour away from the bank, by himself, and without a weapon or disguise.  While this indicates that the robbery may not have been as imminent as it seemed to Agent Booth, it  does not negate evidence from which the jury could have found Wesley intended to rob the bank or that he planned to do it "soon."  Likewise, although defendant told Reid that he doubted the robbery would be the next day and said he was "at a standstill," he did not disavow his plan or indicate he was having second thoughts.  In addition, the jury was free to conclude, as Agent Booth believed, that these statements were a reflection that Wesley had become suspicious of Reid.  As we made clear in *Bilderbeck*, the focus of the inquiry is not so much whether the actions constitute "preparation," but whether the conduct corroborates clear criminal intent.

Defendant's heavy reliance on *United States v. Buffington*, 815 F.2d 1292 (9th Cir. 1987), is misplaced.  Although the court in *Buffington* reversed the defendants' convictions for attempted bank

---

[1] The Fifth Circuit found consolation in its view that the defendant in that case, who went into the bank to rob it but left before making any demand for money, could have been charged with bank larceny under the second paragraph of § 2113(a) (whoever "enters or attempts to enter any bank" "with intent to commit . . . any felony affecting such bank," "or any larceny").  This would not apply to Wesley, or to any defendant who did not enter or attempt to enter the bank.

[2] The jury was instructed, without objection, that:  "Merely preparing to commit a crime, however, is not a substantial step, not an overt act.  Defendant's conduct must go beyond mere preparation and must strongly confirm that he intended at some point to commit the crime of bank robbery.  The Government does not have to prove that the defendant did everything except the last act necessary to complete the crime.  Any substantial step beyond mere preparation is enough."

robbery on sufficiency of the evidence grounds, closer examination of the case reveals that it is easily distinguished. Significant to the reasoning in *Buffington* was the fact that the government had chosen not to present evidence concerning the information received from the confidential informant. Instead, the government argued that intent could be inferred from the observations of the police officers who saw the defendants drive slowly around a bank in a shopping center and return five days later with revolvers and in disguises. The Ninth Circuit found this evidence alone, unaided by the informant's testimony, was insufficient to establish intent to rob the bank or a substantial step toward commission of the crime. In this case, however, the government offered substantial evidence from Reid and others concerning Wesley's intent to rob the Stockbridge bank.[3]

As we observed in our initial opinion, whether there was sufficient evidence to establish that Wesley committed an overt act that constituted a substantial step toward commission of the crime is a closer question. While we find reversible error in the admission of the statements referring to Wesley's prior conviction, retrial is not precluded if the evidence admitted at trial, whether erroneously or not, was sufficient to support the defendant's conviction. *Lockhart v. Nelson*, 488 U.S. 33, 34 (1988). In resolving that question, however, we are mindful that we may not reweigh the evidence or substitute our judgment for that of the jury.

Wesley's overt acts began with his late-night visit to Reid's home to question her about whether the bank was a good target for robbery. Wesley recruited Reid to act as the "getaway" driver because she was familiar with the area. There was also evidence that Wesley attempted to recruit Carr, a convicted robber, to participate in the bank robbery, although Carr declined to join in. Wesley conveyed specific plans to Reid and told her he knew someone he could trust to help. Finally, Wesley had Reid take him to see the bank, including the open vault, and picked the route for the getaway after the robbery.

The critical inquiry in the "substantial step" analysis, separate from the question of subjective intent, is whether the defendant's conduct, viewed objectively, corroborates his subjective intent to commit the crime. For example, we explained by way of a hypothetical in *Bilderbeck* that a penniless man who engages in active negotiations with a drug dealer, knowing that he had no money with which to consummate the sale, has committed acts that objectively corroborate the firmness of his intent and constitutes a "substantial step" toward the commission of the crime. 163 F.3d at 975. Taking the evidence in the light most favorable to the government, as we must, we find that a rational juror could conclude beyond a reasonable doubt that Wesley's conduct, when viewed objectively, unequivocally corroborates his subjective intent to commit bank robbery. As a result, we find there was sufficient evidence presented at trial to support Wesley's conviction for attempted bank robbery.

## B.    Evidentiary Issues

The district court's evidentiary rulings are reviewed under an abuse of discretion standard. *United States v. Mack*, 258 F.3d 548, 552 & n.1 (6th Cir. 2001). Defendant appeals both from the admission of the videotape recording made during the car ride to Stockbridge to "case" the bank and from the failure to redact from that recording the defendant's reference to his own prior incarceration.

### 1.    Videotape Recording

Admission of tape recordings rests within the sound discretion of the district court. *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983) (*Robinson I*). The tape must be authentic, accurate and

---

[3]When the defendants in *Buffington* returned to the shopping center, officers saw them drive slowly past two banks before parking the car. Then one defendant went into a nearby store and behaved suspiciously, while the other two got out of the car and directed their attention to the bank. By sheer coincidence, a power outage caused a teller to lock the front door of the bank just as she saw one of the defendants covering his face with a scarf. The defendants got back into the car and left.

trustworthy, and "must be audible and sufficiently comprehensible for the jury to consider the contents." *Id.* (citations omitted). The fact that the tape has some unintelligible portions does not automatically render the entire recording inadmissible. *United States v. Robinson*, 763 F.2d 778, 781 (6th Cir. 1985) (*Robinson II*). To be inadmissible, "the incomprehensible portions must be so 'substantial as to render the recordings as a whole untrustworthy.'" *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995) (quoting *Robinson II*, 763 F.2d at 781); *see also United States v. Terry*, 729 F.2d 1063, 1068 (6th Cir. 1984); *United States v. West*, 948 F.2d 1042 (6th Cir. 1991).

Defendant contends that it was an abuse of discretion to allow the videotape recording into evidence because the incomprehensible portions were so substantial as to render the recording as a whole untrustworthy. In response to the defendant's motion *in limine*, the district court listened to the videotape recording *in camera* and compared it to the transcript that had been prepared of it. With respect to the audibility of the tape and the accuracy of the transcript, the district court found that

> the audio was interrupted by jostling of the car, electronic interference, to some extent, wind noise. The voices are much easier to hear; indeed they're crystal clear when the car comes to a stop or it comes near making a stop. The portions of the transcript that correspond to the tape are, so far as I can tell, spot on. They're entirely accurate. They accurately transcribe the intelligible words. And they accurately indicate with parenthetical notations of unintelligibility where the voices cannot be deciphered or heard clearly enough to be transcribed. The portions that are transcribed appear to deal in some measure with planning to rob a bank. There's no question about the relevance of the tape. There's indeed no contest about that. But the tape is not so at odds with the printed transcription that it is to be deemed inadmissible. It is not equivocal. . . .
>
> The surveillance video should be admissible. The portions that are unintelligible are just that. They're neither pro [n]or con. They're neither here nor there. They're simply unintelligible. Voices can be detected but what's being said cannot be.

The tape was admitted into evidence and the jury was allowed to use the transcript as an aid. Review of the transcript makes clear that the audible portions were comprehensible and supports the district court's assessment that the inaudible portions were not so substantial as to render the whole recording untrustworthy.

### 2.          "Other Acts" Evidence

Wesley also objected before trial to the admission of the following passage from the videotape:

> Yeah, I've been knowin' this brother all my life. We went to prison together. We did somethin' together. We got caught, we went to trial. Ain't nobody tell on nobody. You know what I'm sayin'? I ain't goin', hell, no. I ain't no fool.

Defendant maintains that this "other acts" evidence was improperly admitted under Fed. R. Evid. 404(b). The government argued that it was admissible as "background" evidence.

This court has held that "background" evidence, often referred to as *res gestae*, is not "other acts" evidence subject to Fed. R. Evid. 404(b). *See United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Such evidence consists of "other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *Id.* "Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.*

As the district court found, this evidence was not "other acts" evidence because it was intertwined with the attempted bank robbery offense. The statements were connected to the attempted bank robbery as they were made on the way to "case" the bank, were part of the planning of the robbery, and were relevant to establish Wesley's intent as he explained the suitability of someone he was considering asking to join them in the robbery. Defendant also argues that the evidence should have been excluded under the balancing required by Fed. R. Evid. 403.

Under Rule 403, relevant evidence may be excluded if its probative value "is substantially outweighed" by the danger of unfair prejudice. Our review of the district court's balancing is for abuse of discretion. Unfair prejudice "'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis.'" *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988) (citation omitted).

While the statements were relevant to show defendant's intent, it was hardly the only or the strongest evidence in that regard. As the district court recognized in deciding to give a cautionary instruction, reference to defendant's prior incarceration presents a classic danger of unfair prejudice—that the jury may decide guilt based on the fact that the defendant has a prior conviction. This is particularly a concern where the evidence presents a close question on the sufficiency of the evidence. Although the cautionary instruction reduces the danger of unfair prejudice, we find that the probative value of the evidence in this case was substantially outweighed by the danger of unfair prejudice and, therefore, defendant is entitled to a new trial.

Accordingly, we **DENY** the defendant's petition for panel rehearing; **AMEND** our prior opinion to explicitly decide the sufficiency-of-the-evidence issue; and **REVERSE** defendant's conviction and **REMAND** to the district court for new trial. As a result, we need not address defendant's challenges to his sentence under *Blakely v. Washington*, 124 S. Ct. 2531 (2005), and *United States v. Booker*, 125 S. Ct. 738 (2005).

—————————————

**DISSENT**

—————————————

BATCHELDER, Circuit Judge, dissenting. While I agree with the conclusions of the majority in Parts II-A-1 and II-B, I respectfully dissent from Part II-A-2 because I believe that even viewing the evidence in the light most favorable to the government, the facts do not establish that Wesley committed overt acts that constituted a substantial step towards the commission of a bank robbery.

The majority correctly points out that in order to convict a defendant of an attempt crime the government must prove both that the defendant had the intent to engage in the proscribed criminal activity, and that he committed an overt act that constitutes a substantial step towards the commission of the crime. *Bilderbeck*, 163 F.3d at 975. For that overt act to constitute a substantial step, the "defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent" to engage in criminal activity. *Id.* As we have explained, "[a] substantial step must be something more than mere preparation." *United States v. Bailey*, 228 F.3d 637, 640 (6th Cir. 2000). "Evidence is sufficient to sustain a conviction for criminal attempt, if it shows that the defendant's conduct goes beyond 'preliminary activities,' and 'a fragment of the crime [was] essentially . . . in progress.'" *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (quoting *United States v. Dolt*, 27 F.3d 235, 239 (6th Cir. 1994)).

The majority concludes that Wesley took a substantial step towards the commission of bank robbery by engaging in several overt acts, including questioning Reid concerning the Stockbridge State Bank and recruiting Reid to act as a getaway driver; attempting to recruit Carr, a convicted armed robber, to participate in the robbery; and casing the bank on September 3, 2004. In my opinion, this is not a case in which the defendant "went beyond mere preparation," *Bailey*, 228 F.3d at 640, or "a fragment of the crime [was] essentially . . . in progress." *Dolt*, 27 F.3d at 239.

In my view, we must look as well at what Wesley failed to do to carry out his plan and recognize just how far he was from actually carrying out the plan. Wesley was arrested at his home, over one hour away from the Stockbridge State Bank, but only about one hour before the bank was set to close that Friday. In his discussions with Reid, Wesley talked about robbing the bank during business hours, wearing dark clothes, using masks, and carrying firearms during the robbery. At the time of Wesley's arrest, the police found no disguises or masks, no weapons, and no other robbery paraphernalia. Wesley also suggested that he would have to steal two switch cars before the robbery could take place, but the government presented no evidence that he had tried to accomplish this task in preparation for the robbery. And while Wesley told Reid that he would need to recruit others to help carry out the robbery, he had not done so. I do not dispute that Wesley may have had the subjective intent to commit bank robbery, however, I do not believe that, when viewed objectively, the facts in this record establish that a he had taken a substantial step towards the commission of the robbery or that any reasonable juror could conclude otherwise.

Because in my mind the evidence adduced at trial, whether erroneously or not, was insufficient to sustain a conviction for attempted bank robbery, I respectfully dissent. I would therefore hold that retrial is precluded. *See Lockhart*, 488 U.S. at 34; *see also Quinn*, 901 F.3d at 529 n. 5.