**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0653n.06

Case No. 17-1206

**FILED**

Nov 22, 2017

DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ROY EDWARD BROWNLEE, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: DAUGHTREY, MOORE, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Roy Brownlee sold heroin. Some of that heroin ended up in the hands of Benny Cavazos, who died from an overdose. After an investigation into Benny's death, a jury convicted Brownlee of conspiring to distribute heroin and fentanyl. At the same time, the jury concluded that the drugs involved in the conspiracy did not cause Benny's death. Brownlee asks us to enter a judgment of acquittal, or at least order a new trial, because he thinks the verdict was inconsistent or deviated from the indictment. We disagree and affirm.

On the morning of April 5, 2015, Delanna Strickland opened the door to her son Benny's room. She found him slumped over the edge of his bed with a syringe and a needle in his right hand. A cigarette lighter, a spoon, and a cotton ball sat on the dresser a few feet away.

Strickland tried to shake Benny awake. When he did not respond, she called 911. Medical personnel confirmed that he died from a drug overdose.

Officers responded to Strickland's home and set out to determine who could have delivered the fatal batch of drugs. After reviewing texts and calls to and from Benny's cell phone involving several potential sellers, the DEA concluded that Zachary Burdette had delivered heroin to Benny on the night of his death. A few days later, Burdette admitted as much to DEA agents and told them that he had obtained the heroin from "Junior," whom agents identified as Roy Brownlee. Burdette agreed to arrange a series of undercover meetings with Brownlee. During those meetings, Brownlee offered or agreed to sell drugs and weapons.

A grand jury indicted Brownlee. Count 1 charged him with conspiring to distribute drugs containing a Schedule I substance (heroin) and a Schedule II substance (fentanyl) during a four-month period from January through May 2015. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. In a separate paragraph, it also alleged that on April 4, 2015, the drugs distributed "during the course of the conspiracy" caused Benny's death. R. 20 at 2. The remaining counts charged Brownlee with distributing and attempting to distribute heroin (2, 5), being a felon in possession of a firearm (3, 6, 9), and dealing firearms without a license (4, 7).

At trial, the evidence showed that Benny was trying to obtain heroin on April 4. A medical examiner confirmed that Benny succeeded. He testified that the cause of Benny's death was a combination of heroin and fentanyl. Burdette, for his part, reiterated what he told the DEA: that he had purchased heroin from Brownlee on five or six occasions over a four-month period; that Brownlee was the single source for the heroin he sold; and that he had sold heroin to Benny sometime on April 4. As to the issue of Benny's death, the defense introduced

evidence of Benny's texts and phone calls, which showed that other individuals could have sold him what became his fatal last dose of heroin.

The jury found Brownlee guilty of all counts, including Count 1's charge of conspiring to distribute controlled substances. In response to a special question on the verdict form, the jury concluded that "the controlled substances distributed during the course of the conspiracy [did not] cause [Benny's] death." R. 66 at 1. Brownlee moved the district court for a judgment of acquittal after the government submitted its case. And he moved for acquittal or a new trial after the jury's verdict. The district court implicitly denied both motions. The district court sentenced him to concurrent prison terms of 20 years (counts 1, 2, 5, and 8), 30 years (counts 3, 6, and 9), and 5 years (counts 4 and 7).

Brownlee raises several challenges to his conviction under Count 1. He does not challenge his convictions under Counts 2 through 9 or the reasonableness of his sentence, except to argue for the first time on appeal that he should be acquitted on Counts 2 through 9 because they were based on the events around April 4, 2015.

*Inconsistent jury verdict.* Brownlee claims that the jury's verdict on Count 1 was inconsistent. Count 1 of the verdict form asked the jury two questions: (1) Was Brownlee guilty of "conspiracy to distribute controlled substances causing death" between January and May of 2015? *Id.* And (2), if so, "did the controlled substances distributed during the course of the conspiracy cause [Benny's] death" on April 4, 2015? *Id.* The jury answered yes to the first question and no to the second.

We usually are skeptical of claims that an inconsistent jury verdict permits us to set aside a conviction. *See United States v. Powell*, 469 U.S. 57, 69 (1984). But even if we had such authority here, we would not invoke it because there was nothing inconsistent about this verdict.

Count 1 of the indictment charged Brownlee with violating 21 U.S.C. § 841(a)(1) and § 846. Taken together, the two statutes make it a crime to conspire to distribute controlled substances. Count 1 also listed the associated penalty provision, § 841(b)(1)(C). Although § 841(b)(1)(C) generally permits a *maximum* sentence of 20 years in prison for violations of § 841(a), it imposes a *minimum* sentence of 20 years "if death . . . results from the use of" the drugs involved in the conspiracy. The jury found Brownlee guilty of the substantive offense, conspiring to distribute drugs. But it found that the sentencing enhancement did not apply because the drugs sold by Brownlee did not cause Benny's death. There is nothing inconsistent about those two conclusions. Consistent with the evidence introduced at trial, it was possible that Brownlee distributed controlled substances, just not the controlled substances that killed Benny.

Brownlee disagrees, pointing to questions the jury asked during deliberation as proof that it became confused and thus could have delivered an inconsistent verdict. The judge's instructions sought to avoid potential confusion. Because the special verdict question about the cause of Benny's death "is a separate matter" and "is not required for the conspiracy," he said the jury should proceed to the second question *only if* it found Brownlee guilty under the first question. R. 81 at 191–92. Nonetheless, during deliberation, the jury asked this question: "[W]e don't understand why [question 1] says conspiracy to distribute controlled substances 'causing death' if we are not supposed to consider [the death] in our deliberation for question 1." R. 82 at 15. The judge responded that the "causing death" language "doesn't change the substance of the criminal charge." *Id.* at 15. Count 1 "could just as easily" omit any reference to death "and be entirely accurate." *Id.* Brownlee did not object to these clarifications.

These instructions and clarifications were consistent with controlling case law. Section 841(b)(1)(C)'s "death" enhancement "is an element that must be submitted to the jury" together

with the alleged violation of § 841(a)(1). *Burrage v. United States*, 134 S. Ct. 881, 887 (2014). While both questions must be submitted to the jury, § 841(a) and § 841(b) remain separate provisions. All that happened was that the jury found facts sufficient for the conspiracy conviction (consistent with considerable evidence on this score) but not the "causing death" finding (consistent with some evidence on this score). The verdict was not inconsistent.

*Deviation from indictment.* Even if the verdict *was* consistent, Brownlee maintains, that is only because the court's instructions varied from the charges in his indictment. The indictment charged him with conspiring "to distribute a mixture and substance containing detectable amounts of heroin . . . and fentanyl," which were the undisputed causes of Benny's death. R. 20 at 2. The verdict form and the judge's instructions, however, referred to a conspiracy "to distribute controlled substances." R. 66 at 1; R. 81 at 151, 191. The latter language, says Brownlee, improperly expanded the charges in the indictment, creating an impermissible constructive amendment or variance.

We will not vacate a conviction on this ground if "the allegation and proof substantially correspond." *Berger v. United States*, 295 U.S. 78, 83 (1935) (quotation omitted). But we will vacate a conviction on this ground if the "indictment . . . cannot fairly be read as charging" the ultimate offense of conviction. *Stirone v. United States*, 361 U.S. 212, 217 (1960). To succeed on this claim, Brownlee must show that the evidence introduced at trial effectively altered the elements of the charged offense. *See United States v. Hynes*, 467 F.3d 951, 961–63 (6th Cir. 2006).

Brownlee cannot meet this standard. The only controlled substances at issue in Brownlee's trial with respect to the conspiracy charge were heroin and fentanyl. The evidence

presented at trial thus did not deviate from the charges in the indictment, which mentioned only heroin and fentanyl.

It is true that the language in the verdict form referred to "controlled substances" in general, not to heroin and fentanyl by name. But a court does not impermissibly alter an indictment whenever it adopts the language in the United States Code to describe a crime, at least not where a judge makes clear that the statute's terms refer to the evidence involved in that case. The judge made just that point here. The jury in Count 1, he said, was being asked to make certain findings about "controlled substances distributed during the course of [a] conspiracy, which in this case were heroin and fentanyl." R. 81 at 194–95. When the jury found Brownlee guilty of conspiring to distribute controlled substances, the only substances at issue were those charged in Count 1 of the indictment.

Brownlee insists that the jury must have convicted him of conspiring to distribute drugs other than heroin and fentanyl because it answered "no" to Count 1's second question. Not necessarily. As just shown, the jury could have concluded that other individuals delivered drugs to Benny on April 4 and that those drugs killed Benny.

It is possible, in light of the evidence presented at trial, that the variance between the jury instructions, the jury verdict form, and the indictment enabled the jury to convict Brownlee of conspiring to distribute heroin, as opposed to fentanyl-laced heroin. But we cannot say on plain-error review—which applies here because Brownlee raised no objections to the verdict form, jury instructions, or the district court's response to the jury's questions at trial, *see United States v. Stonefish*, 402 F.3d 691, 697 (6th Cir. 2005)—that this possibility "seriously affects the fairness, integrity, or public reputation of judicial proceedings," *id.* (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)). At trial, the government aimed to prove that Brownlee had

conspired to distribute fentanyl-laced heroin by showing that Brownlee had conspired to distribute and had actually distributed heroin, and by tying Brownlee to the fatal dose of fentanyl-laced heroin that killed Benny. Though the government ultimately failed to establish the second prong, the evidence presented at trial as to the charged act in Count 1 (conspiracy to distribute fentanyl-laced heroin) and the seemingly proved act (conspiracy to distribute heroin) were identical, and the evidence marshalled in defense was the same. This is not a case, like *Stirone v. United States*, where the defendant was forced to confront and present evidence wholly unrelated to the charges for which he was indicted. *See* 361 U.S. at 213–15 (reversing conviction where the defendant was charged with interfering with interstate commerce by delaying shipments of sand coming into Pennsylvania, but the government was allowed to present proof at trial that the defendant had instead affected interstate commerce by interfering with steel shipments coming from Pennsylvania into Michigan and Kentucky). In light of the Supreme Court's admonition not to treat a variance "as material where the allegation and proof substantially correspond, or where the variance was not of a character which could have misled the defendant at the trial," *Berger*, 295 U.S. at 83 (quotation omitted), we find the discrepancy between the charged act and the proved act insufficiently significant to cause us to doubt the "fairness" or "integrity" of Brownlee's trial.

*Other arguments.* Brownlee's remaining arguments also lack merit. He argues that his Fifth Amendment right to due process was violated because the government (i) concluded its investigation into other potential sources of heroin too quickly; (ii) never offered him a fair plea deal; and (iii) conducted a series of undercover stings that allowed it to charge him with additional crimes. In the span of ten pages in his brief, Brownlee does not cite a single legal authority in support of these arguments. We doubt any such authority exists, but more to the

point it is not the job of an appellate court to make these arguments for him. *See Figueroa-Rubio v. INS*, 108 F.3d 110, 112 (6th Cir. 1997). The claims fail for lack of support.

Brownlee also argues that the district court erred by implicitly denying his motions for acquittal or a new trial. We give fresh review to the former and deferential review to the latter. *United States v. Kuehne*, 547 F.3d 667, 677, 692 (6th Cir. 2008). Brownlee claims that the evidence introduced at trial cannot support his conviction under Count 1 and thus justifies an acquittal. Viewing that evidence in the government's favor, we cannot say that no reasonable juror could have found the elements of conspiracy. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). There was sufficient evidence introduced at trial that Brownlee conspired to sell heroin and fentanyl. A similar conclusion applies to Brownlee's claim that the evidence "preponderate[d] heavily against the verdict" and thus justifies a new trial. *United States v. Hughes*, 505 F.3d 578, 592–93 (6th Cir. 2007) (quotation omitted). No abuse of discretion occurred given the ample evidence in support of his conviction on Count 1.

Finally, Brownlee's argument that he should be acquitted of Counts 2 through 9 is forfeited. Brownlee did not include this claim in his Rule 29 motion at trial, and therefore "appellate review is limited to determining whether there was a manifest miscarriage of justice." *See United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (quotation omitted); *see also United States v. Wesley*, 417 F.3d 612, 617–18 (6th Cir. 2005). We will reverse a conviction under this standard only "if the record is devoid of evidence pointing to guilt." *Kuehne*, 547 F.3d at 697 (quotation omitted). Abundant evidence supports the jury's guilty verdicts on Counts 2 through 9, and thus Brownlee has failed to establish that his convictions on those counts ought to be overturned.

We affirm.